# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BRENDA F. SCHEU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:08-00081 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 15. Defendant has filed a Responsive Motion for Judgment on the Administrative Record and a Supporting Memorandum, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry Nos. 19-20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed her applications for a Period of Disability, DIB, and SSI[1] on April 14, 2003, alleging that she had been disabled since April 15, 2000,[2] due to depression, anxiety, chest pain, moderate fatigue, back pain, carpal tunnel syndrome, migraine headaches, panic attacks, high blood pressure, and angina. Docket Entry No. 12, Attachment ("TR"), TR 41, 425-428, 448, 534-537. Plaintiff's applications were denied both initially (TR 372-373, 538-539) and upon reconsideration (TR 375-376, 541-542). Plaintiff subsequently requested (TR 397-398) and received (TR 403-406) a hearing. Plaintiff's hearing was conducted on February 1, 2005, by Administrative Law Judge ("ALJ") George L. Evans, III. TR 543-568. Plaintiff appeared and testified. *Id.*

On July 28, 2005, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 378-387. Plaintiff timely filed a request for review of the hearing decision. TR 415. On April 24, 2006, the Appeals Council remanded the case to the ALJ: 1) to determine whether Plaintiff's past work

---

[1] Plaintiff's application for SSI benefits contains a date stamp from the Social Security Administration's District Office of April 14, 2003. TR 534. Plaintiff signed the application on April 10, 2003. TR 536. The initial determination by the Social Security Administration contains a date stating that Plaintiff filed for her application for SSI benefits on March 21, 2003. TR 538. Plaintiff's Brief states that Plaintiff filed her application for SSI benefits on April 14, 2003. Docket Entry No. 16. Defendant's Brief and the ALJ's opinion state that Plaintiff filed her application for SSI benefits on March 21, 2003. Docket Entry No. 20, TR 26. These discrepancies are not, however, material to the issues before the Court.

[2] The original applications for DIB and SSI claimed that April 15, 2000 was the onset date of Plaintiff's disability. TR 425-428, 534-537. At Plaintiff's first hearing, the ALJ amended the alleged onset date of disability to January 31, 2003. TR 382, 549. Plaintiff later amended the alleged onset date of disability to February 15, 2003 in interrogatories answered by Plaintiff on July 21, 2006. TR 26, 447-454.

2

met all of the criteria used to determine past relevant work; 2) to proceed to step five of the sequential evaluation process if necessary and apply an appropriate GRID rule to Plaintiff's case; 3) to further consider Plaintiff's maximum residual functional capacity as well as to provide a rationale with specific reference to the evidence of Record in support of the assessed limitations; and 4) to obtain evidence from a vocational expert, if necessary, to clarify the effect of the assessed limitations of Plaintiff's occupational base. TR 419-422.

On August 23, 2006, ALJ K. Dickson Grissom held Plaintiff's second hearing. TR 569-586. Plaintiff and Vocational Expert ("VE") JoAnn Bullard appeared and testified. *Id.* On November 16, 2006, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 23-32. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2. The claimant has not engaged in substantial gainful activity since February 15, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Depression, Anxiety, Eating Disorder, Obsessive Compulsive Disorder, and Post Traumatic Stress Disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, unskilled, light work

3

>           activity lifting twenty pounds occasionally and ten pounds
>           frequently, sitting for two hours in an eight-hour day,
>           standing and/or walking for up to six hours in an eight-hour
>           day; avoiding more than occasional climbing, stooping,
>           crouching, crawling, and bending from the waist to the
>           ground; with minimal or no interaction with the general
>           public; involving simple, repetitive, non-detailed tasks.
>           She is limited to casual and infrequent coworker contact
>           and direct and nonconfrontational supervision. She can
>           adapt to infrequent and gradually introduced changes.
>
>     6.    The claimant is capable of performing past relevant work
>           as housekeeper/cleaner. This work does not require the
>           performance of work-related activities precluded by the
>           claimant's residual functional capacity (20 CFR 404.1565
>           and 416.965).
>
>     7.    The claimant has not been under a "disability," as defined
>           in the Social Security Act, from February 15, 2003 through
>           the date of this decision (20 CFR 404.1520(f) and
>           416.920(f)).

TR 28-32.

On December 8, 2006, Plaintiff timely filed a request for review of the hearing decision. TR 21.[3] On July 3, 2008, the Appeals Council issued a letter declining to review the case (TR 6-8), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

---

[3] The request for review of the hearing decision contained two dates, one signed by Plaintiff on November 29, 2006, and the other noting that the Social Security Administration received the form on December 8, 2006. TR 21.

4

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III. CONCLUSIONS OF LAW

#### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the

5

Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*,

---

[4] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

7

820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: 1) erroneously disregarded the opinions of Plaintiff's treating physicians that described restrictions which would not allow Plaintiff to perform even sedentary work; and 2) failed to give proper consideration to the opinions of Plaintiff's treating mental health care providers. Docket Entry No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or, in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

8

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Assessment of the Opinions of Plaintiff's Treating Physicians**

Plaintiff argues that the ALJ erroneously disregarded the opinions of her treating physicians that described restrictions which would not allow her to perform even sedentary work. Docket Entry No. 16.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.

9

> The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

Plaintiff argues that the ALJ erred in rejecting the opinions of her treating physician, Dr. John Bacon, and of her nurse practitioner, Edna Woodard, because their assessments were sufficiently supported by medical findings. Docket Entry No. 16. Plaintiff further argues that the ALJ's supposition that some of Dr. Bacon's medical findings regarding Plaintiff's exertional limitations were based solely upon subjective complaints was without support. *Id*. Plaintiff additionally argues that the ALJ failed to review nurse practitioner Edna Woodard's medical assessment, and that the ALJ inappropriately made general assumptions that a physician would complete an inaccurate medical assessment to avoid repeated requests by a patient. *Id*.

Defendant responds that the ALJ appropriately dismissed portions of Dr. Bacon's assessment of Plaintiff's residual functional capacity ("RFC") because it was based on pure speculation and it "markedly" departed from the evidence of Record. Docket Entry No. 20. Defendant further responds that the ALJ, in fact, discussed the assessment of Edna Woodard and found that no objective evidence supported the extreme limitations contained therein. *Id*. Defendant additionally responds that Plaintiff lacks any basis for accusing the ALJ of bias in rejecting part of Dr. Bacon's assessment because the ALJ only noted the possibility that, in some cases, physicians may provide "disability" opinions to assist their patients in obtaining disability

10

benefits and Medicaid to pay medical fees. *Id*.

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

While Plaintiff contends that the ALJ erroneously disregarded Dr. Bacon's opinion, the ALJ simply did not do so. Docket Entry No. 16. The ALJ found that, contrary to Plaintiff's argument that she could not perform even sedentary work, the objective medical evidence regarding Plaintiff's back pain was minimal with regard to her limitations. TR 31. The ALJ based this conclusion on Dr. Bacon's findings regarding Plaintiff's ability to do work-related activities. TR 339-341. Dr. Bacon opined that Plaintiff had the ability to lift twenty pounds occasionally, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. TR 31, 339-341. The ALJ also noted Dr. Bacon's findings that Plaintiff had muscle spasms in the lumbar spine with mild degenerative disc disease and that x-rays of Plaintiff's back indicated only slight degenerative change. TR 31, 340, 343, 346. The ALJ accepted these findings, but disregarded the finding that Plaintiff would be absent from work as a result of her impairments on average about three times a month. TR 31, 339-341. The ALJ found that this portion of Dr. Bacon's opinion appeared to be based entirely on Plaintiff's subjective complaints. TR 31. The ALJ noted that his review of the Record failed to reveal any restrictions recommended by Dr. Bacon as a result of Plaintiff's allegations of "totally disabling

11

symptoms." *Id*. Additionally, the ALJ noted that Dr. Bacon's own reports failed to reveal the type of significant clinical and laboratory abnormalities one would expect if Plaintiff were in fact disabled. *Id*. The ALJ therefore concluded that Plaintiff's impairments did not preclude her from sitting for two hours in an eight-hour workday, and standing and/or walking for six hours in an eight-hour workday. TR 32. As has been demonstrated, the ALJ did not disregard the opinion of Dr. Bacon; rather, he accepted those portions of Dr. Bacon's opinion that he found to be based on objective evidence, and disregarded those portions of Dr. Bacon's opinion that he found to be based entirely on subjective complaints. TR 31-32. This determination was within his province. Plaintiff's argument fails.

Additionally, while Plaintiff argues that the ALJ failed to consider the opinion of Edna Woodard, a nurse practitioner, the ALJ in fact considered her opinion. Docket Entry No. 16. The ALJ noted Nurse Woodard's finding that Plaintiff's back pain and hand numbness would preclude her from doing even sedentary work. TR 31, 487-489. The ALJ additionally noted that Nurse Woodard opined that Plaintiff would need breaks every hour or less throughout an eight-hour workday, and would be absent from work an average of four or more days per month as a result of her impairments. *Id*. The ALJ noted, however, that Nurse Woodard indicated that her opinion was based on subjective data only. *Id*. Accordingly, the ALJ determined that the medical evidence of Record did not support the restrictions imposed by Nurse Woodard's opinion. TR 31. This determination was proper.

Dr. Bacon treated Plaintiff for approximately two months, and Nurse Woodard treated Plaintiff for approximately one month, facts that would justify the ALJ's giving greater weight to their opinions than to the opinions of those who had not treated Plaintiff at all. TR 339-347,

12

487-489. As has been noted, however, the ALJ did not accord controlling weight to Dr. Bacon's and Nurse Woodard's opinions because they contained unsupported findings based upon Plaintiff's subjective complaints. The Sixth Circuit has repeatedly held that the Secretary may properly reject the opinion of a treating physician where that opinion is not sufficiently supported by medical findings. *Combs v. Commissioner*, 459 F.3d 640, 652 (6th Cir. 2006)(*en banc*); *Walters v. Commissioner*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Landsaw v. Secretary of H.H.S.*, 803 F.2d 211, 213 (6th Cir. 1986); *Murphy v. Secretary of H.H.S.*, 801 F.2d 182, 185 (6th Cir. 1986); *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986); *Houston v. Secretary of H.H.S.*, 736 F.2d 365, 367 (6th Cir. 1984); *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971). As the Regulations state, the ALJ must evaluate all symptoms, including pain, and the extent to which the symptoms can be accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529(a) and 20 C.F.R. § 416.929(a). The ALJ is not required to give substantial weight to medical opinions based solely upon subjective complaints. *See* 20 C.F.R. § 404.1512(b), § 404.1513(b), § 416.912(b), and § 416.913(b). As such, the Regulations do not mandate that the ALJ accord Dr. Bacon's and Nurse Woodard's evaluations controlling weight. Accordingly, Plaintiff's argument fails.

**2. Consideration of the Opinions of Plaintiff's Treating Mental Health Care Providers**

Plaintiff also contends that the ALJ failed to give proper consideration to the opinions of Plaintiff's treating mental health care providers at Valley Ridge Mental Health Care Center ("Valley Ridge"). Docket Entry No. 16. Plaintiff specifically contends that the ALJ erroneously

13

failed to find that Plaintiff met the "B" criteria of both Listing 12.04 and Listing 12.06, because he did not give proper consideration and weight to the evidence from Valley Ridge. *Id*. Plaintiff further contends that a review of the treatment notes and Clinically Related Group ("CRG") form assessments from Valley Ridge demonstrates that Plaintiff's global assessment of functioning ("GAF") was typically 45, which is a level of functional limitation that satisfies the requisite level of severity described by Listings 12.04 and 12.06. *Id*.

Defendant responds that the ALJ correctly relied on the opinions of Drs. Loftis and Kirk in formulating the non-exertional component of his RFC finding. Docket Entry No. 20. Defendant further responds that Plaintiff's reliance on GAF scores to dictate a finding of disability is misplaced because GAF scores do not have a direct correlation to the severity requirements in the mental disorder Listings. *Id*. Defendant argues that Plaintiff's GAF scores should not be considered disability "opinions" for Social Security disability determination purposes because such scores can be speculative and are not reliable indicators of disability. *Id*.

With regard to affective and anxiety related disorders, the Code of Federal Regulations states in pertinent part as follows:

> 12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . .
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended

duration;

. . .

12.06 *Anxiety Related Disorders*: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04 and 12.06.[5]

Although Plaintiff contends that the ALJ failed to properly consider the evidence from Plaintiff's treating mental health care providers at Valley Ridge, the ALJ simply did not do so. Docket Entry No. 16. The ALJ in fact reviewed the medical evidence of Record and detailed the findings from Plaintiff's mental health treatment at Valley Ridge from September 2003 through March 2006. TR 29-30. While the ALJ did not specifically mention that his findings were derived from Valley Ridge's assessments, it is clear that this was the case. For example, the ALJ found that Plaintiff's GAF was assessed as 55 in September 2003. TR 29. The Record shows that, on September 16, 2003, professionals at Valley Ridge mental health assessed Plaintiff's GAF as 55. TR 247, 251. The ALJ also noted that Plaintiff had "marked and extreme limitations" in "August," but that they appeared to be based on Plaintiff's subjective report. TR 29. The Record shows that, on August 11, 2004, professionals at Valley Ridge mental health completed a CRG assessment form showing marked and extreme limitations. TR 359-361. The ALJ additionally noted that Plaintiff reported a decrease in obsessive thoughts in 2004. TR 29.

---

[5] The "B" requirements are the same for Listings 12.04 and 12.06.

An August 20, 2004 treatment record from Valley Ridge mental health indicates that Plaintiff had "less obsessive thoughts." TR 356. Moreover, the ALJ noted that, in September 2005, Plaintiff had mild limitations of daily living and moderate limitations in social function, concentration, and adaptation. TR 30. The Record shows that, on September 8, 2005, professionals at Valley Ridge mental health completed a CRG assessment form showing mild limitations of daily living and moderate limitations in social function, concentration, and adaptation. TR 484-486. The ALJ further noted that, in March 2006, Plaintiff had moderate limitations in social and occupational functioning. TR 30. Plaintiff's March 24, 2006, Valley Ridge mental health "plan of care" indicates that Plaintiff had moderate limitations in social and occupational functioning. TR 466. As has been demonstrated, the ALJ clearly considered Valley Ridge mental health professionals' treatment notes and opinions when determining that Plaintiff had the ability to meet the mental demands of work activity. TR 29-30.

Additionally, the ALJ clearly articulated in his opinion the reasons why he found that Plaintiff failed to meet the "B" criteria of Listings 12.04 and 12.06, stating:

> Claimant's depression, anxiety, and PTSD must be evaluated under the "B" criteria of Medical Listings 12.04 and 12.06 of 20 CFR 404, Appendix 1 to Subpart P. These include: the claimant's ability to handle activities of daily living; to function in a social setting; to concentrate, persist and maintain pace at work-related job tasks: and whether or not she has experienced any episodes of decompensation causing an exacerbation of her symptoms.
>
> The claimant has moderate limitation in the activities of daily living and moderate limitation in social functioning. She has moderate limitation in concentration, persistence, or pace, and she experiences no episodes of decompensation. The state agency medical consultant indicated that the claimant could perform simple tasks and adapt to infrequent changes. He indicated she should avoid interaction with the general public.

> Her therapist indicated marked limitations due to the fact that social contact consisted of interaction with family. Social contact with family only does not mean marked limitations under our standards. The evidence does not show that she was only capable of interacting with her family. The therapist's opinion is accorded little weight.
>
> The claimant had difficulty giving information to the consulting physician but not the consulting psychological examiner.
>
> In June of 2003, the consulting opinion noted depressive disorder. He indicated that she would be limited to simple tasks. He noted that she may improve with continued treatment. She reported a history of heavy drinking (Exhibit 5F).
>
> The undersigned finds that the claimant's symptoms improved with treatment. With the restriction noted in the residual functional capacity above, the claimant could meet the mental demands of work activity.

TR 30.

An ALJ has the duty to review all of the medical and testimonial evidence relevant to a claim. 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). If the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence, disability within the meaning of the Act and Regulations exists. 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2). As discussed above, the ALJ in the case at bar properly discussed in detail the medical records from Plaintiff's treatment at Valley Ridge before determining that Plaintiff was not disabled within the meaning of the Act and Regulations. After reviewing the medical evidence in its entirety, the ALJ concluded that Plaintiff had moderate limitations in the first three functional areas of the "B" criteria and had no episodes of decompensation under the fourth functional area. TR 30, 197, 484-486. These findings failed to indicate that Plaintiff suffered a disabling level of severity from her depression and anxiety disorders under the Listings. *Id.* Plaintiff's argument fails.

Plaintiff further contends that a review of all of the treatment notes and CRG form assessments from Valley Ridge revealed that Plaintiff's GAF was typically 45, which was a level of functional limitation that satisfied the level of severity described in Listings 12.04 and 12.06. Docket Entry No. 16. Plaintiff, however, fails to cite to a Regulation requiring the ALJ to base his decision soley upon Plaintiff's GAF score and not on a comprehensive review of the Record as a whole. Additionally, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Although Plaintiff correctly asserts that she was assessed with a GAF of 45 (TR 361, 470, 472, 474, 476), Plaintiff's GAF was also assessed as 55 on September 16, 2003, and as 65 on September 8, 2005, during her treatment at Valley Ridge (TR 247, 486). Additionally, other physicians assessed Plaintiff's GAF as 55 and 60 (TR 204, 215) and found that Plaintiff's mental limitations failed to rise to a disabling level of severity under the "B" criteria of Listings 12.04 and 12.06 (TR 197). As noted above, if the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence, disability within the meaning of the Act and Regulations exists. 20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2). After reviewing the medical evidence of Record, including Plaintiff's lower GAF scores, the ALJ determined that Plaintiff failed to meet the "B" criteria of Listings 12.04 and 12.06. TR 30. This determination was proper.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

18

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

                                                                      E. CLIFTON KNOWLES
                                                                      United States Magistrate Judge